## STATE v. HOWARD.

1. In a prosecution for larceny and burglary, the State is not bound to prove that the offence was committed on the very day alleged in the indictment; any day before bill found is sufficient.
2. The denial of a party charged with crime, at the preliminary examination, he not having been sworn, and having made no statement for record, may be proved by parol.
3. In saying to the jury that a charge met by the denial of the party charged is not evidence of guilt, but that if the denial was accompanied with a lie, the jury have a right to inquire, "Why did he lie?" and follow the convictions of their mind—the judge did not charge upon the facts.

Before PRESSLEY, J., Darlington, March, 1889.

The opinion states the case.

*Mr. C. P. Dargan*, for appellant.

No counsel contra.

February 17, 1890.   The opinion of the court was delivered by
MR. JUSTICE MCGOWAN.   This is an indictment for "house-
breaking and larceny," tried at the March term of the court
(1889) for Darlington County.   It appeared that John S. Mc-
Call had charge of Mrs. Williams's plantation, which had on it
what was called a "gin mill;" that James White, who lived near
the gin, superintended it, weighing cotton, &c. ; that it was his
habit to lock the house at night and take the key home with him.
About November 20th (1888), it was discovered that the night
before the gin house had been entered, and cotton from two piles
taken and carried away, supposed to be about 60 or 70 pounds.

As the house was found locked, it was a mystery how it had
been entered, and this induced a more careful watch.   A faith-
ful man, Abram Young, was appointed to guard the gin at night,
with instructions to go round every night, after White had locked
up, to see that everything was fast.   This man lay on a pile of
cotton seed under the gin and kept "watch and ward" over it.

There was testimony tending to show that "at dark daylight,"
on the morning of December 10th. the watchman heard "a rum-
bling" in the house; saw no one go in; went to the door, but
found it locked; waited until the door was opened from the in-
side.   (Objection was made to all testimony as to what occurred
on December 10th. on the ground that the indictment alleges that
the offence occurred on November 20th.   Objection overruled
and defendants except.)   When the door was opened from the
inside, the watchman rushed in, and, after a scuffle, captured the
intruder, who turned out to be Wilkins Howard, one of the de-
fendants, a mere boy, who had 40 pounds of cotton tied up in a
sheet.   He cried and said he would not have been there, if he had
not been persuaded to do it.   He showed a hole in the floor,
very little over six inches wide, where he had entered, being
helped up to the floor by "another person," who remained outside

until the door was opened from the inside, when he, "the other person," was to come in and get the cotton (tracks of a grown man and boy were found under the house); said he and the "other party" referred to had been in the gin house only once before, when they had a large sheet and a coffee sack—a very large crocus sheet—he "toted the coffee sack, and the other party carried the sheet," and they hid the cotton in the woods, where the "other party" was to get it the next night; that he (Howard) got 25 cents for opening the door, and was to get more when the cotton was sold. That the "other party" referred to was Wallace Brown. (Defendants' counsel objected to any declarations of Wilkins Howard implicating Wallace Brown. Objection sustained.)

When Wallace Brown was charged with being at the mill plantation that night, he denied it, saying he was at home at Plumfield, some two miles away. Several witnesses, however, testified that Wallace Brown was at the mill plantation that night; he was "at prayer meeting" about a quarter of a mile from the gin house. "He stood up against the door for a while, but left early, 'just before the shouting commenced,' and went up towards the upper quarter where Stepney Howard lived, the father of the little boy."

The defendants did not offer any testimony nor go upon the stand to exculpate themselves. Upon the charge of the judge, the jury found both defendants "guilty," and they were sentenced to the penitentiary for one year. Wallace Brown appeals to this court from the sentence, the rulings of his honor, and the charge to the jury, upon the following exceptions: "I. That it was error to allow testimony as to what transpired on December 10th, as that was another transaction and a separate offence. The indictment alleged that the crime was committed on November 19th, the defendant being taken by surprise, over which he had no control, and was thereby debarred from making the defence of an '*alibi.*' II. That it was error to allow McCall to testify as to what Wallace Brown said or did at the preliminary hearing; that being secondary evidence, 'the record' of the trial justice being the best evidence as to what was said or done then. III. That it was error in his honor, the judge, to charge the jury upon the

facts in the following words, 'When a man is charged with an offence, and a lie is proved on him as to his whereabouts, you are bound to inquire, why did he lie about it?'—this being a violation of article IV., section 26, of the Constitution of the State. IV. That it was error to charge that the fact of the defendant being upon or about the premises on the night of the alleged offence was no [afforded a] presumption of his guilt, nor any evidence against him, more than upon any others upon or near said premises that night, who were equally in a condition or had equal opportunity of committing some offence, inasmuch as his honor laid in his charge so much stress upon the defendant being there that night."

As to the first exception. There is no copy of the indictment in the Brief, but from the objections made, we infer that it had but one count, which charged the offence to have been committed on November 19th, 1888. Assuming this, was it error on the part of the Circuit Judge to admit evidence of what occurred afterwards on December 10th? It is not necessary to prove that an offence was committed on the precise day or even year laid in the indictment, except when time enters into the nature of the offence, or is made part of the description of it. *State v. Branham*, 13 S. C., 396; *State v. Porter*, 10 Rich., 145; *State v. Anderson*, 3 *Id.*, 176. In the last case cited, the court said: "It is sufficient to prove so much of the indictment as shows that the defendant had committed a substantial crime therein specified. 2 Camp. Rep., 585. In cases for retailing, as in almost every other prosecution, instead of the day alleged, any day before the finding of the bill may be proved. Time may be made part of the description of an offence, but when the description is sufficient, independent of time, the act charged is identified by the proof of other sufficient particulars, although the time specified be wholly departed from," &c. It is true that a party may not be convicted on the same indictment for more than one offence, and if the proof tends to show more than one offence, the accused party may require the solicitor, or officer of the State, to elect on which he rests the case of the State, and the Circuit Judge so ruled. *State v. Hutchings*, 24 S. C., 145.

The second exception alleges error on the part of the judge in

allowing McCall to testify as to what Wallace Brown said or did
not say at the preliminary hearing, that being secondary evi-
dence, the record of the trial justice being the best evidence of
what was said or done on that occasion. It is undoubtedly true
that to make it evidence against the party, a confession of guilt
must be entirely voluntary. But we do not understand that a
denial by a party accused that he was not on the premises when
the offence was committed, can be considered in any proper sense
as a confession of guilt. On the contrary, it would seem to be
precisely the reverse—an absolute denial of all connection with
the affair. Besides, it did not appear that Brown was required
to swear or to make any written statement for record before trial
justice Sompyrac, or that there was in existence any such "rec-
ord." It seems that, as soon as the boy Howard implicated
him as the person who helped him through the hole in the floor,
Brown spoke out and declared he was not on the gin premises
that night, which would seem to have precluded any further "state-
ment" from him. "Upon a preliminary examination, the ac-
cused parties have the right to be present and cross-examine wit-
nesses, but they are not required to make any statement them-
selves." (*Gen. Stat.*, [of 1872, p.] 197.) It is not the duty of
a trial justice to examine accused parties or to take their state-
ments in writing, unless they are sworn as witnesses on behalf
of the State by their own consent; and if he does so, it is not an
official act; but he is not prohibited from doing so." (See *State
v. Branham, supra.*) We think there was no error in allowing
proof of Brown's denial that he was on the gin premises the night
the offence was committed.

The third and fourth exceptions complain that the judge
charged upon the facts, in violation of section 26, article IV., of
the Constitution, which declares that "Judges shall not charge
juries in respect to matters of fact, but may state the testimony
and declare the law." As this court has often had occasion to
know, it is not always easy, in dealing with the facts, to fix the
exact line which divides the province of the trial judge from that
of the jury. It seems, however, to be reasonably well settled
that "the judge must carefully avoid expressing an opinion on the
facts, leaving it to the jury to draw their own conclusions entire-

ly unbiassed by any impression which the testimony may make upon the mind of the judge. He must not in any way indicate his opinion of the facts to the jury." See *State v. Addy*, 28 S. C., 13, and authorities cited. Taking this as our guide, did the judge merely "state" the testimony by recalling what was testified to, and arranging it under proper heads, with a view to enable the jury to decide the issues of fact, or did he indicate to the jury his own opinions ?

As to Wallace Brown, he charged as follows : "Did he take part in it or not ? Well, the only proof against him whatever is that the man that was caught in the act confessed ; the only proof against him is, that White, who examined the place below under that hole, saw there two tracks, one of a grown man and the other of a boy ; that while examining it, the boy told him that the man held him up and pushed him through the hole. The parties were taken before a trial justice, and there the boy charged Brown to his face as the person that was with him that night. Brown denies it. And if he merely denied it, the charge and denial would not have been sufficient evidence to warrant your convicting Brown ; but did he add a lie to his denial ? That is a question for you. Did he add falsehood to his denial ? If he did, then you have a right to follow the convictions of your mind. Where a man is charged with an offence, and a lie is proved upon him as to his whereabouts, you are bound to inquire, 'Why did he lie about it ?' These are inquiries you are to make. Did he tell a falsehood about it ? Two weeks, perhaps three weeks, but certainly two, so he says, he was not on the plantation at night. Witnesses, whom you heard testify, say he was there ; that they saw him at first dark and saw him no more until they saw him at the 'prayer-meeting ;' that he was there in the meeting, and Mingo, who had charge of the prayer-meeting, says he was there until 10 or 11 o'clock, and that he went away 'before the shouting began ;' that when he went away he saw him pass up towards the upper quarter—saw him pass his house—and then the next house above that was Stepney Howard's, the father of the boy. Mr. McCall says that is the only house up there after passing Mingo's. Is it, then, proved that he was on the plantation, and that when he disappeared from the prayer meeting, he proceeded

in the direction where he could find that boy? Is it so or not? If you consider that so proved, then what are your conclusions? Then follow that. If it leads your mind to the unshaken conviction that he was the man with the boy that night, you will say 'guilty.' If you have a reasonable doubt about it—that there is not sufficient proof—say 'not guilty.'"

It will be observed that the judge did not lay so "much stress" upon the fact that Brown was at the quarter that night, as upon his positive denial that he was there. The undisputed testimony was certainly "stated" with clearness and force. It seems to us, however, that the judge did not indicate his own opinion of the facts, but left them to be decided by the jury—giving the defendant the benefit of all reasonable doubts.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.